[Cite as *State v. Jordan*, 2026-Ohio-2625.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

State of Ohio,                              :

    Plaintiff-Appellee,             :       Case No. 24CA4070

    v.                                      :

                       :       <u>DECISION AND</u>
Adrienne L. Jordan,                        :       <u>JUDGMENT ENTRY</u>

    Defendant-Appellant.            :

_____

APPEARANCES:

Adam J. Banks, Amlin, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Matthew F. Loesch, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

Smith, P.J.

{¶1} Appellant, Adrienne L. Jordan, appeals the judgment of the Scioto County Court of Common Pleas convicting her of one count of possession of cocaine, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(f), as well as one count of possessing criminal tools, a fifth-degree felony in violation of R.C. 2923.24(A) and (C).  On appeal, appellant contends 1) the trial court erred in denying her motion to suppress evidence; and 2) that she was denied her right to a fair trial in violation of the U.S. and Ohio Constitutions.  However, because we

find no merit to the arguments raised under either of appellant's assignments of error, they are overruled and the judgment of the trial court is affirmed.

FACTS

{¶2} On June 29, 2020, Appellant was indicted, along with her co-defendant Sashia Johnson, for the following offenses:

| | |
|---|---|
| Count One: | Trafficking in Cocaine, a first-degree felony in violation of R.C. 2925.03(A)(2) and (C)(4)(g); |
| Count Two: | Possession of Cocaine, a first-degree felony in violation of R.C. 2925.11(A) and (C)(4)(f); and |
| Count Three: | Possessing Criminal Tools, a fifth-degree felony in violation of R.C. 2923.24(A) and (C). |

{¶3} Count One included two specifications. The first specification stated that appellant had possessed, sold, or had offered to sell approximately 170 grams of cocaine and that, as a result, she was a major drug offender. The second specification stated that appellant was the owner or possessor of a Cadillac Escalade which was contraband and/or property derived from or through the commission or facilitation of the offense, and/or was an instrumentality the offender used or intended to use in the commission of the offense and was subject to forfeiture pursuant to R.C. 2941.1417(A), R.C. 2981.02, and R.C. 2981.04.

Count Two contained identical specifications. Count Three referenced the same Cadillac being used criminally in the commission of a felony.

{¶4} The charges stemmed from a traffic stop that occurred on the night of June 9, 2020, while appellant was a passenger in the Cadillac at issue, which was being driven by Sashia Johnson. Trooper Nick Lewis with the Ohio State Highway Patrol initially began to follow the Cadillac after an anonymous tip had been related to him by dispatch stating that a black Cadillac SUV would be travelling south on U.S. Route 23, driven by appellant and Johnson, and that the two women were carrying narcotics. Lewis observed the Cadillac heading south on U.S. Route 23 while he was sitting stationery in the median talking to Trooper Kuehne, who was located in a different vehicle. Lewis pulled out and followed the Cadillac for three to four miles during which time he paced the vehicle traveling 65 m.p.h. in a 60-m.p.h. zone and then observed the vehicle enter into a construction zone at 55 m.p.h. despite being marked a 35-m.p.h. zone.

{¶5} Trooper Lewis initiated a stop of the vehicle, initially approaching the passenger side of the vehicle to ask for identification. Trooper Kuehne arrived at that time and commented to Trooper Lewis when he approached that he could smell marijuana. Trooper Lewis then moved to the driver's side of the vehicle and briefly spoke to the driver before opening her vehicle door and ordering her to step out. When the door was opened, Lewis observed marijuana residue on a sock that

was stuck inside the door.  After appellant got out of the vehicle upon Trooper Kuehne's request, she informed him that she had marijuana and asked him if she could get back in the vehicle to get it.  Trooper Kuehne did not permit her to do that.  Both women were patted down, placed in the back of the cruiser, and a search of the vehicle followed.

{¶6} The search ultimately yielded approximately 170 grams of cocaine which was found in the center front seat console of the vehicle, located between the driver and front passenger seats.  A cell phone charging cord was plugged into the console where the bag of cocaine was found.  Marijuana was also recovered from appellant's purse.  Appellant and Johnson, her co-defendant, were both placed under arrest and read their *Miranda* rights.  Prior to being taken to jail, appellant's mother, who was the registered owner of the vehicle, arrived at the scene.  Appellant told her mother she was sorry through the window of the cruiser. While the two women were in jail, they each made several calls to their mothers attempting to locate money for a bond, a bondsperson, and an attorney who would represent both of them.

{¶7} Appellant pled not guilty to the charges and the matter proceeded through discovery.  It appears from the record that appellant and her co-defendant initially and intentionally hired the same attorney.  The State filed a motion on August 3, 2020, on "Conflicting Representation," claiming there was an indication

there could be a conflict of interest with respect to the two defendants having the same counsel and suggesting the trial court had a duty to inquire into the matter. Appellant filed a memorandum in opposition to the State's motion on August 21, 2020, denying there was a conflict and attaching Conflict Waivers signed by herself and her co-defendant. Appellant argued that she and her co-defendant claimed innocence and wished to present a unified defense. She further claimed that neither had a desire to present a defense strategy in opposition to the other and that they were "in harmony" with one another.

{¶8} While the conflict issue was still pending, appellant filed a motion to suppress evidence on October 2, 2020. In her motion, she challenged the initial stop as well as the search of the vehicle and sought suppression of the results of the search. The motion also sought suppression of statements made by appellant. Thereafter, on November 9, 2020, the trial court issued a decision finding a "serious potential for a conflict of interest in dual representation of both defendants" and removed counsel from representing either appellant or her co-defendant. Appellant appealed that decision to this Court, but the appeal was unsuccessful, as evidenced by this Court's decision issued on April 28, 2022. Appellant then appealed our decision to the Supreme Court of Ohio, which ultimately declined to accept jurisdiction on August 3, 2023.

{¶9} The trial court held a pretrial conference on August 25, 2023, and thereafter filed a judgment entry on September 5, 2023, stating that it had been informed appellant wished to retain counsel and that it was continuing an upcoming pretrial conference as a result. The transcript from that hearing indicates that appellant informed the court she had a bad experience with appointed counsel (Aaron Triplett) in the past and that she wanted to speak to her family about coming up with funds to hire a new attorney. Thereafter, on September 15, 2023, an entry was filed stating appellant tested positive for marijuana, that appellant was being held in contempt, and ordering appellant be remanded to jail. Appellant filed an affidavit of indigency on September 19, 2023, and it appears by that time the trial court had already appointed Aaron Triplett to represent her. Hearings were held on September 15, 2023, and October 2, 2023, and appellant made no complaint about Attorney Triplett.

{¶10} A suppression hearing was held on November 29, 2023. Trooper Nick Lewis testified on behalf of the State, explaining the speed violations he observed which led to the initial stop as well as the detection of an odor of marijuana which expanded the stop and led to the detention of both women. He testified regarding appellant's statement to Trooper Kuehne indicating she had marijuana in the vehicle, as well as the discovery of marijuana in appellant's purse. He also testified regarding the search of the vehicle and the eventual discovery of

cocaine in the console. Trooper Lewis' cruiser cam video was played and admitted into evidence along with several photographs, one of which demonstrated what the trooper described as marijuana residue on top of a sock that was stuck in the drivers' side vehicle door. After the suppression hearing was conducted, appellant retained counsel on December 5, 2023, as evidenced by a notice of appearance filed the same date. The trial court issued a decision on December 19, 2023, denying appellant's motion to suppress.

{¶11} The matter thereafter proceeded to a jury trial. Appellant and her co-defendant were jointly tried, albeit with separate counsel. The State introduced four witnesses including Trooper Lewis, Lauren Ditto, Sergeant Drew Kuehne, and Captain Ron Davis. Trooper Lewis and Sergeant Kuehne both testified regarding their involvement in the initial stop, detention, search, discovery of drugs, and later review of the cruiser cam video. Portions of the cruiser cam videos were played for the jury, and a listening aid was provided to assist the jurors in listening to the video. The troopers' testimony will be further discussed below. Lauren Ditto, a forensic scientist with the Ohio Bureau of Criminal Investigation, testified regarding her analysis of the substances sent for testing. She testified that the "white rock-like substance" was found to be cocaine with an approximate gram weight of 168.9770.

{¶12} Captain Ron Davis is the Administrative Captain of the Scioto County Sheriff's Office. He testified regarding the telephone system that is used to record inmate phone calls placed from the jail. During his testimony, he identified two different calls placed from appellant to her mother as well as two different calls placed by appellant's co-defendant to her own mother. Excerpts from all four calls were played for the jury, over the objection of defense counsel. Although the trial court denied the objection, it provided a limiting instruction regarding the consideration of jail calls as part of its general jury instructions that were provided at the close of the case. The contents of those calls will be discussed in detail below.

{¶13} The State rested its case, at which time appellant moved the court for an acquittal pursuant to Crim.R. 29(A). The trial court denied the motion and the defense rested without presenting any evidence. After the matter was submitted to the jury for deliberation, the jury sent a question back asking to be able to view the cruiser cam video again. The jury was brought back in and allowed to watch the video. It was permitted once again to use the listening aid that it used during trial, however, it was not permitted to take the video or the listening aid back to the jury room with it.

{¶14} The jury ultimately acquitted appellant on the drug trafficking charge and found her guilty of possession of cocaine and criminal tools. However, the

verdict form for possession of cocaine specified that the amount of cocaine possessed was less than 100 grams, which did not support the major drug offender specification as charged in the indictment. The trial court sentenced appellant to serve a mandatory minimum sentence of seven years to an indefinite maximum prison term of up to ten years and six months for the possession of cocaine charge. It sentenced her to a prison term of six months on the possession of criminal tools charge and ordered the two prison terms to be served concurrently to one another but consecutive to a sentence appellant was already serving. The court further ordered the Cadillac at issue be forfeited to the State of Ohio and it imposed a fine of $20,000.

{¶15} Appellant thereafter filed her timely appeal, setting forth two assignments of error for our review.

## ASSIGNMENTS OF ERROR

I. THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT JORDAN'S MOTION TO SUPPRESS EVIDENCE.

II. DEFENDANT-APPELLANT JORDAN WAS DENIED HER RIGHT TO A FAIR TRIAL IN VIOLATION OF THE U.S. AND OHIO CONSTITUTIONS.

ASSIGNMENT OF ERROR I

{¶16} In her first assignment of error, appellant contends that the trial court erred in denying her motion to suppress.  Appellant's brief contains two "Issues presented for review" under this assignment of error, which are as follows:

1.      Whether the evidence obtained during the search and seizure of the defendant was in violation of her United States and Ohio constitutional rights?

2.      Whether the duration of the stop extended beyond the normal time frame for the purpose of the original stop such to render the search an illegal seizure?

The State's responses to each issue will be discussed in more detail below, however, it generally contends there is no merit to any of the arguments raised under this assignment of error.

Standard of Review and Guiding Legal Principles

{¶17} Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Williams*, 2024-Ohio-2146, ¶ 16 (4th Dist.), citing *State v. Burnside*, 2003-Ohio-5372, ¶ 8.  The trial court acts as the trier of fact at a suppression hearing and is in the best position to resolve factual questions and evaluate witness credibility.  *State v. Sheets*, 2023-Ohio-2591, ¶ 45 (4th Dist.), citing *State v. Leonard*, 2017-Ohio-1541, ¶ 15 (4th Dist.), citing *Burnside* at ¶ 8. This is because the trial court is able to " 'gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.' "

*State v. Meadows*, 2022-Ohio-287, ¶ 18 (4th Dist.), quoting *State v. Hammond*,

2019-Ohio-4253 ¶ 56 (4th Dist.).

{¶18} However, as noted in *Meadows*, " '[t]he trier of fact is free to believe

all, part, or none of the testimony of any witness[.]' " *Id*. As a result, appellate

courts defer to the trial court's findings of fact if they are supported by competent,

credible evidence. *Sheets* at ¶ 45, citing *State v. Gurley*, 2015-Ohio-5361, ¶ 16

(4th Dist.). Accepting the trial court's findings of fact as true, appellate courts then

"independently determine whether the trial court reached the correct legal

conclusion in analyzing the facts of the case." *Sheets* at ¶ 45, citing *Gurley* at ¶ 16,

in turn citing *State v. Roberts*, 2006-Ohio-3665, ¶ 100.

{¶19} The Fourth Amendment to the United States Constitution and Article

I, Section 14 of the Ohio Constitution provide that persons have a right to be free

from unreasonable searches and seizures and that probable cause is necessary for

searches. The exclusionary rule protects this constitutional guarantee and

mandates the exclusion of evidence obtained from an unreasonable search and

seizure. *State v. Shrewsbury*, 2014-Ohio-716, ¶ 14 (4th Dist.), citing *State v.*

*Emerson*, 2012-Ohio-5047, ¶ 15. The same protection is provided by Article I,

Section 14 of the Ohio Constitution.

Legal Analysis

Initial Stop

{¶20} Appellant first argues that the initial stop of the vehicle was invalid because it stemmed from an anonymous tip. She also contends there was no cruiser video to confirm a speed violation, suggesting that Trooper Lewis "utilized these alleged traffic violations to stop and search the vehicle and interrogate the occupants." The State responds by arguing that Ohio law does not require that police have probable cause before following a vehicle. The State further argues that the trooper possessed reasonable suspicion to stop the vehicle based upon his observation of a speeding violation.

{¶21} A traffic stop is a type of seizure and constitutionally valid only if an officer has reasonable and articulable suspicion that a motorist has committed, is committing, or is about to commit a crime. *State v. Williams*, *supra*, at ¶ 17, citing *State v. Mays*, 2008-Ohio-4539, ¶ 7 and *Delaware v. Prouse*, 440 U.S. 648, 663 (1979). Probable cause "is a stricter standard than reasonable and articulable suspicion" and "is a complete justification for a traffic stop[.]" *Mays* at ¶ 23, citing *State v. Evans*, 67 Ohio St.3d 405, 411 (1993). The Supreme Court of the United States has held that probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.' " *Gerstein v. Pugh*, 420 U.S. 103, 111-112 (1975),

quoting *Beck v. Ohio,* 379 U.S. 89, 91 (1964). *See also State v. Jordan*, 2021-Ohio-3922, ¶ 19.

{¶22} " 'A police officer may stop the driver of a vehicle after observing a de minimis violation of traffic laws.' " *Williams, supra,* at ¶ 19, quoting *State v. Guseman*, 2009-Ohio-952, ¶ 20 (4th Dist.). One such traffic law is the requirement that a motorist drive within the posted speed limit, including within a construction zone. *See* R.C. 4511.21. " 'Moreover, the Supreme Court of Ohio has held, "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment ... even if the officer had some ulterior motive for making the stop[.]" ' " *State v. Smith*, 2025-Ohio-5752, ¶ 46 (4th Dist.), quoting *State v. Andrews*, 2025-Ohio-2803, ¶ 22 (4th Dist.), in turn quoting *Dayton v. Erickson*, 76 Ohio St.3d 3 (1996), paragraph one of the syllabus.

{¶23} Trooper Lewis testified during the suppression hearing that upon following the vehicle, he paced it going 65 m.p.h. in a 60-m.p.h. zone. He then observed the vehicle enter a construction zone with a posted speed limit of 35 m.p.h. while traveling 55 m.p.h. These observations by Trooper Lewis were sufficient to establish probable cause to justify a traffic stop, aside from the anonymous tip that was received. Stated another way, even if the trooper initially began following appellant based upon an ulterior motive stemming from the

anonymous tip, the subsequent observation of the traffic violations legitimized the stop and removed any requirement that the tip be determined to be reliable before acting upon it.

{¶24} With respect to appellant's argument that there was no cruiser video demonstrating that a speed violation occurred, Trooper Lewis testified at length regarding his observation of two speeding violations and the trial court obviously found his testimony to be credible. We must be mindful that " 'observing and evaluating the credibility of witnesses is the province of the trial court and we defer to the trial court's judgment here.' " *Williams* at ¶ 23, quoting *State v. Harris*, 2012-Ohio-4237, ¶ 22. Moreover, as this Court stated in *Williams*, "there is no requirement for an officer's observation of a traffic violation [to] be recorded on video." *Williams* at ¶ 23, citing *State v. Lemaster*, 2012-Ohio-971, ¶ 12 (4th Dist.) ("Competent, credible evidence in the form of the trooper's testimony from the suppression hearing supports this finding despite the fact that the violation was not caught on the video."). Thus, based upon the foregoing, we conclude Trooper Lewis had probable cause to stop appellant's vehicle.

### Detention and Search

{¶25} Appellant next argues that Trooper Lewis' act of opening the driver's vehicle door constituted an illegal search. She further argues that she and her co-defendant were unlawfully detained. The State responds by arguing that because

the troopers encountered an odor of raw marijuana upon approaching the vehicle, they immediately acquired probable cause to search the vehicle. The State further argues that the order for both women to get out of the vehicle was reasonable and permissible. Finally, the State argues that because the troopers detected an odor of raw marijuana and then plainly saw evidence of marijuana being illegally transported in the vehicle, any extension of the length of the stop at that point was lawful and appropriate in order to conduct a search for illegal controlled substances and contraband.

{¶26} We have already determined that the initial stop of the vehicle appellant was traveling in was valid. Aside from the fact that law enforcement had received an anonymous tip that a vehicle fitting the description of the vehicle at issue would be passing through and the occupants were carrying a large amount of narcotics, because Trooper Lewis observed two speeding violations, he had probable cause to stop the vehicle based upon the traffic violations alone. Furthermore, "[o]nce a driver has been lawfully stopped, an officer may order the driver to get out of the vehicle without any additional justification." *State v. Burkhart*, 2016-Ohio-7534, ¶ 11 (4th Dist.), citing *State v. Kilbarger*, 2012-Ohio-1521, ¶ 16 (4th Dist.), in turn citing *State v. Huffman*, 2011-Ohio-4668, ¶ 8 (2d Dist.); *State v. Jackson*, 2022-Ohio-4365, ¶ 13 (4th Dist.) (officer may order driver out of car and needs no justification beyond that necessary for the initial stop). *See*

*also Pennsylvania v. Mimms*, 434 U.S. 106, 111, fn. 6 (1977) and *State v. Alexander-Lindsey*, 2016-Ohio-3033, ¶ 14 (4th Dist.) ("Officers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation.").

{¶27} Even though Trooper Lewis had a valid reason to stop the vehicle, "[i]t is well-established that the scope and duration of a routine traffic stop 'must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop.' " *State v. Jones*, 2022-Ohio-561, ¶ 21 (4th Dist.), quoting *Florida v. Royer*, 460 U.S. 491, 500 (1983). Therefore, " '[w]hen a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates.' " *Jones* at ¶ 22, quoting *State v. Aguirre*, 2003-Ohio-4909, ¶ 36 (4th Dist.).

{¶28} However, " '[a]n officer may expand the scope of the stop and may continue to detain the vehicle and its occupants without running afoul of the Fourth Amendment if the officer discovers further facts which give rise to a reasonable suspicion that additional criminal activity is afoot.' " *Jones* at ¶ 23, quoting *State v. Rose*, 2006-Ohio-5292, ¶ 17 (4th Dist.), in turn citing *State v. Robinette*, 80 Ohio St. 3d 234, 240 (1997). *See also State v. Dunbar*, 2024-Ohio-1460, ¶ 29 (4th

Dist.). A reviewing court looks to the totality of the circumstances to determine whether reasonable articulable suspicion exists when a traffic stop is extended. *State v. Batchili*, 2007-Ohio-2204, ¶ 17, citing *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

{¶29} Trooper Lewis clearly had reasonable suspicion to detain the vehicle and both occupants once he and Sergeant Kuehne immediately detected an odor of raw marijuana when they approached the vehicle. These observations also provided the troopers with probable cause to search the vehicle. "Probable cause exists when there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Boykins*, 2024-Ohio-5898, ¶ 15, (4th Dist.), quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983). " 'When a law enforcement officer has probable cause to believe that a vehicle contains contraband, the officer may search a validly stopped motor vehicle based upon the well-established automobile exception to the warrant requirement.' " *Boykins* at ¶ 15, quoting *State v. Malone*, 2022-Ohio-1409, ¶ 30 (4th Dist.), citing *State v. Moore*, 90 Ohio St.3d 47, 51 (2000). Additionally, and importantly, *Boykins* explains that " 'Ohio courts have held that the production of drugs by an occupant of the vehicle independently provides an officer with additional probable cause to believe that the vehicle contains evidence of contraband.' " *Boykins* at ¶ 15, quoting *State v. Donaldson*, 2019-Ohio-232, ¶ 29 (6th Dist.).

{¶30} In fact, despite appellant's argument to the contrary, this Court has recently reaffirmed and acknowledged that " ' "[t]he smell of marijuana, alone, by a person qualified to recognize this odor, is sufficient to establish probable cause to conduct a search." ' " *State v. Smith*, *supra*, at ¶ 55 (4th Dist.), quoting *State v. Jones*, *supra*, at ¶ 29, in turn quoting *State v. Moore*, 90 Ohio St.3d 47 (2000), syllabus.[1]  We further explained as follows in *Smith*:

> [" ']Any odor of marijuana emanating from a legally stopped vehicle creates probable cause to believe that a violation of the law has occurred.[' " *State v. Jones, supra*, at ¶ 29, quoting] *State v. Brown*, 2017-Ohio-2880, ¶ 9, 90 N.E.3d 384 (2d Dist.). [" 'W]hen a police officer has probable cause to believe a vehicle contains evidence of a crime, the officer may conduct a warrantless search of every part of the vehicle and its contents, including all movable containers and packages, that could logically conceal the objects of the search.[' "] *State v. Farrow*, 2023-Ohio-682, ¶ 18, 209 N.E.3d 830 (4th Dist.), quoting *State v. Maddox*, 2021-Ohio-586, ¶ 20, 168 N.E.3d 613 (10th Dist.), citing *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

*Smith* at ¶ 55.

{¶31} Just as in *Smith,* here the State demonstrated that Trooper Lewis had probable cause to search the vehicle.  The State established that Lewis was familiar

---

[1] In her reply brief, appellant cites *State v. Oliver*, 2023-Ohio-1550 (10th Dist.), claiming that court held "that the smell of raw marijuana alone is no longer sufficient to establish probable cause because since legal and illegal marijuana coexist, it is impossible to discern legality based solely on odor."  However, this Court has reviewed *Oliver* and we find that the holding in that case is nothing close to what appellant represents.  In fact, in *Oliver*, the search of the vehicle based upon an odor of raw marijuana was not challenged.  *Id.* at ¶ 75.  The *Oliver* court actually held that "[a]n officer's detection of the odor of marijuana in a car does not, alone, establish probable cause sufficient to search an occupant of that car without a warrant."  *Id.* at ¶ 80.  The search of a person, as opposed to a vehicle, is not at issue in this case and, thus, *Oliver* has no applicability.

with the odor of raw marijuana through both training and experience. The State also introduced testimony from Trooper Lewis that when Sergeant Kuehne arrived and approached the passenger side of the vehicle, he commented to Lewis that he detected an odor of marijuana. Trooper Lewis explained that he had detected the same odor upon his initial approach. The State also introduced evidence in the form of testimony from Trooper Lewis as well as photographs demonstrating that marijuana residue was observed on a sock located inside the driver's side door when Trooper Lewis opened the door for appellant to step out of the vehicle.

{¶32} Further, we find no merit to appellant's argument that Trooper Lewis' act of opening the driver's door of the vehicle for appellant's co-defendant to exit in accordance with a lawful order constituted a search. In *State v. Jackson, supra*, the Supreme Court of Ohio rejected an argument that an officer's opening of a car door constituted a search. *Jackson* at ¶ 14. The Court held that Jackson's argument was an attempt to circumvent *Mimms*, stating that arguing the act of an officer opening the car door, rather than the driver, constitutes not just a seizure, but a search, "miscomprehends" what constitutes a search. *Id.* The Court explained that "[t]he lead officer's opening the door was not a search because he did not act with the purpose of finding out what was inside the car," but instead the officer's intent was to secure the driver. *Id.* at ¶ 16.

{¶33} The *Jackson* Court essentially held that if the initial stop is lawful, then the order to get out of the car is constitutionally permissible and the issue of who opened the door is irrelevant. *Id.* at ¶ 20, citing *State v. Ferrise*, 269 N.W.2d 888, 890 (Minn. 1978) ("there is little practical difference [under *Mimms*] between ordering a driver to open his door and get out of his car, on the one hand, and opening the door for the driver and telling him to get out"). Moreover, in the present case the troopers' detection of an odor of raw marijuana upon approaching the vehicle had already provided sufficient probable cause to justify a search of the vehicle. Trooper Lewis' observation of marijuana residue on a sock located in the drivers' side door when the door was opened did not provide the only probable cause to search the vehicle.

{¶34} Moreover, we find appellant's argument that the trooper opened the vehicle because he intended to search it, rather than to control the driver, is not supported by the record. Trooper Lewis testified as follows during the suppression hearing:

> Q:    How often would you say you ask a driver out of the vehicle, even if you're not – even if you're not going to conduct a search?
>
> A:    Typically, if I'm working interdiction, the vast majority of the time –
>
> Q:    Okay.
>
> A:    -- I ask them to step out.

Q:      Why is that?

A:      Basically, I – I like to have them out with me.  I can see their body language.  I can see if they have any weapons on them.  I bring them back to my cruiser, talk to them, while I'm checking out their information.  It basically expedites the process.  So, instead of me going back and forth if I have questions, I don't have to keep going back and forth.  I have them back with me.  I also feel it's safer.  Because if there is something inside the vehicle, I have them out with me, so I kind of eliminate that second approach to the car.

Q:      Okay.  And based on your training through the highway patrol, is there statistical increase of harm on reapproach to a motor vehicle?

A:      Yes.

Thus, Trooper Lewis' testimony was consistent with attempting to secure and control and the driver, rather than an attempt to obtain grounds to conduct a search. This is true especially in light of the fact that the trooper already had probable cause to search the entire vehicle based upon the odor of raw marijuana alone.  The additional observation of marijuana residue inside the vehicle door was simply incidental to lawfully removing the driver from the vehicle.

{¶35} In light of our determinations that the initial stop was based upon probable cause, that the detention was lawful, and that the vehicle search was based upon probable cause and was lawfully conducted, appellant was not entitled to have the results of the search suppressed.  Thus, we find no error in the trial court's denial of appellant's motion to suppress.  Accordingly, having found no

merit in any of the arguments raised under appellant's first assignment of error, it is overruled.

ASSIGNMENT OF ERROR II

{¶36} In her second assignment of error, appellant contends that she was denied her right to a fair trial. Appellant presents six issues for review under this assignment of error, as follows:

1.    Whether the trial court abused its discretion in removing defendant's counsel of choice on the court's perceived conflict of interest and then appointing as her counsel a former attorney with whom she had expressed her dissatisfaction?

2.    Whether defendant's Fifth Amendment right to remain silent was abrogated by the admission of evidence as to her silence after receipt of *Miranda* warnings and the State's repeated references to infer guilt by her silence?

3.    Whether the admission of jail calls of the defendants below violates appellant's due process rights and denies her a fair trial, especially inasmuch as neither defendant presented evidence or testified at trial?

4.    Whether the trial court's failure to give limiting instructions as to the jail calls at the time of the admission of the calls or testimony regarding same, coupled with his repeated assurances that he would do so, but reserving such limiting instruction to the end of trial deprived appellant of a fair trial?

5.    Whether the denial of defendant's Rule 29(A) motion at the close of the State's case deprived her of a fair trial based upon the properly admitted evidence at trial?

6.  Whether the cumulative effect of the errors below resulted in the defendant being denied a fair trial, such to require reversal of her convictions?

The State's response to each of these arguments will be discussed in more detail below, however, the State ultimately contends there is no merit to any of the arguments raised by appellant and that they should be overruled.

Issue 1: Counsel of Choice/Appointed Counsel

{¶37} Under her first issue presented, appellant essentially argues that the trial court abused its discretion in removing defendant's counsel of choice on the court's perceived conflict of interest and then appointing as her counsel a former attorney with whom she had expressed her dissatisfaction. As set forth above, appellant and her co-defendant initially retained the same counsel. The trial court agreed with the State that the dual representation presented the potential for a conflict of interest and removed retained counsel. Appellant appealed the decision to this Court, which upheld the trial court's decision, and the Supreme Court of Ohio refused to consider the case. In her brief, appellant now states "without intent to revisit the rulings on the issue," that "the Trial Court lacked impartiality in denying her the counsel of her choice." Appellant further complains that the trial court thereafter appointed an attorney to represent her in whom she had expressed dissatisfaction in prior dealings.

{¶38} The State responds by arguing that this Court's prior holding regarding the removal of appellant's retained counsel in *State v. Jordan*, 2022-Ohio-1480 (4th Dist.), which determined there was no abuse of discretion by the trial court in removing appellant's counsel of choice, is controlling and that this present challenge is barred by the doctrine of res judicata. For the following reasons, we agree with the State. We further find no abuse of discretion with respect to the trial court's appointment of counsel for appellant once it appeared she was indigent and could not hire new counsel.

{¶39} The doctrine of res judicata generally states that "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment." *State v. Perry*, 10 Ohio St.2d 175, 176, 226 N.E.2d 104 (1967), paragraph nine of the syllabus. Consequently, "the doctrine serves to preclude a defendant who has had his day in court from seeking a second on that same issue." *State v. Saxon*, 2006-Ohio-1245, ¶ 18. "In so doing, res judicata promotes the principles of finality and judicial economy by preventing endless relitigation of an issue on which a defendant has already received a full and fair opportunity to be heard." *Id.*

{¶40} Despite appellant's claim that she does not intend to revisit the prior rulings related to the removal of her hired counsel, her argument that the trial court demonstrated impartiality in denying her the counsel of her choice is an attempt to do just that. However, the doctrine of res judicata bars her from seeking to endlessly relitigate the issue of the fairness and correctness in removing her retained counsel of choice. *See Smith v. Buchanan*, 2014-Ohio-459, ¶ 20 (noting that defendant "has had ample opportunity to litigate this claim, and res judicata now bars his latest attempt"). Appellant already received a full and fair opportunity to be heard on this issue and it is now barred from relitigation.

{¶41} Furthermore, with respect to the trial court's appointment of counsel in whose services appellant had been dissatisfied with on a prior occasion, it is well settled that:

> The right of an accused to select his own counsel is inherent only in those cases wherein such accused is employing the counsel himself. The right to have counsel assigned by the court does not impose a duty on the court to allow the accused to choose his own counsel; the selection is within the discretion of the court.

*Thurston v. Maxwell*, 3 Ohio St.2d 92, 93 (1965), citing 23 C.J.S. Criminal Law § 982(5), p. 962.

{¶42} An abuse of discretion implies that a court's attitude was unreasonable, arbitrary, or unconscionable. *State v. Beasley*, 2018-Ohio-16, ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). " 'A decision is

unreasonable if there is no sound reasoning process that would support that decision.' " *State v. Ford*, 2019-Ohio-4539, ¶ 106, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). "[A]n 'arbitrary' decision is one made 'without consideration of or regard for facts [or] circumstances.' " *State v. Beasley*, *supra*, at ¶ 12, quoting Black's Law Dictionary (10th Ed.2014). *See also Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting Black's (5th Ed.1979) ("arbitrary" means " 'without adequate determining principle; ... not governed by any fixed rules or standard' "). An unconscionable decision is one "showing no regard for conscience" or "affronting the sense of justice, decency, or reasonableness." Black's (11th Ed. 2019). An unconscionable decision also may be characterized as "[s]hockingly unjust or unfair." *Id.* Moreover, when reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court. *E.g., State v. Grate*, 2020-Ohio-5584, ¶ 187; *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138 (1991).

{¶43} A review of the record indicates that once the Supreme Court of Ohio refused to accept appellant's appeal for review, appellant's hired counsel was no longer on the case and appellant was without counsel. The trial court held a pretrial hearing on August 25, 2023. Appellant informed the court that she wished to retain counsel and that she did not want appointed counsel, explaining in

particular that she previously had Aaron Triplett as appointed counsel and that she was not satisfied with his services. As a result, the trial court continued the matter for appellant to have time to retain counsel.

{¶44} Thereafter, on September 15, 2023, appellant was arrested due to a positive drug screen. It appears that the trial court appointed Aaron Triplett to represent her at that time.[2] Hearings were held on September 15, 2023, and October 2, 2023. Appellant made no complaints regarding Attorney Triplett's representation. Further, the hearing on the motion to suppress was held on November 29, 2023. Appellant made no complaints regarding Attorney Triplett's representation at that time either.

{¶45} Based upon the record before us, we find no abuse of discretion on the part of the trial court in the appointment of counsel in this case. As set forth above, although an indigent defendant has a right to counsel, he has no right to choose appointed counsel. Instead, the appointment of counsel is within the sound discretion of the trial court. We cannot conclude that the trial court's appointment of counsel whom appellant had expressed dissatisfaction with on a matter that occurred several years prior constitutes an abuse of discretion. This is especially true where, once counsel was appointed, appellant made no further complaint and has pointed to no prejudice occurring in connection with counsel's performance.

---

[2] Appellant filed an affidavit of indigency requesting appointed counsel on September 19, 2023.

Moreover, the appointment was only for a short period of less than three months on a matter that took four years to reach trial. Thus, we find no merit to the first issue presented under appellant's second assignment of error.

Issue 2: State's References to Appellant's Post-Arrest Silence

{¶46} In her merit brief, appellant complains of "[t]he State's repeated introduction of evidence and comments as to the silence of Ms. Jordan in order to infer knowledge of her guilt constitutes violation [sic] of her Fifth Amendment right to remain silent." In her reply brief, appellant argues that "the prosecutions [sic] statements at closing argument to the effect that Appellant did not deny her guilt or ask about drugs or otherwise speak after she received her *Miranda* warnings was improper." Despite these general descriptions of allegedly impermissible statements made by the prosecution, appellant never actually sets forth in the argument portion of her brief the exact statements made by the State that she claims violated her Fifth Amendment right to remain silent. However, after searching the record, a task this Court is not required to do, we can glean that appellant's argument focuses on the time period when appellant was in the back of the cruiser with her co-defendant after she was *Mirandized*, coupled with a comment that the State made during its rebuttal closing argument.

{¶47} A review of the cruiser cam video demonstrates that although appellant answered questions of law enforcement and volunteered information to

law enforcement before she was *Mirandized*, once placed under arrest and provided her *Miranda* rights, she said essentially nothing either to law enforcement or to her co-defendant, who was seated and handcuffed in the cruiser beside her. She can be heard on camera, however, speaking through the window of the cruiser and telling her mother she was sorry when her mother arrived on scene.

{¶48} A review of the trial transcript reveals that during cross-examination of Trooper Lewis, defense counsel was attempting to establish that his client did not make any admissions or confessions in an attempt to contradict the trooper's testimony that in his opinion and based upon his assessment of the video, appellant and her co-defendant had knowledge that cocaine was in the console. As part of this effort, he questioned Trooper Lewis as follows:

Q:    Okay. And nothing that you learn, whether its from the phones, you know, the peripheral matters of this investigation, the phone extractions, what you did or did not see, nothing suggested to you, in fact, who put it in the console, when it was put in the console and at what time, right?

A:    No. Only that they both knew it was in the console.

Q:    Well, that – that's your opinion or assessment, right?

A:    My assessment based on the video.

Q:    Yeah. That's your opinion; right?

A:    Assessment, opinion.

Q:      Yeah.  But – but – but there was no admissions by Ms. Johnson, right?  She didn't say, yeah, I knew that cocaine was in there, I put it there?

A:      Yeah.  No admissions, and no questions about what we found, why they were being placed under arrest.

Q:      Yeah.

A:      Why's someone have to come get their car.

Thus, it was the defense rather than the State that initially elicited testimony from the trooper that could be construed to equate appellant's post-arrest silence with guilt.  Further, it is clear that the trooper's testimony was provided in response to defense counsel's suggestion that appellant's failure to confess to the crime while in the back of the cruiser tended to indicate she had no knowledge of the fact that cocaine had just been discovered in the car.

{¶49} Later on, presumably in response to this line of questioning, the prosecutor stated as follows in the rebuttal closing argument regarding appellant's silence in the cruiser, as well as a hand gesture made towards appellant by her co-defendant in order to silence her:

> Why else when two people get in the back of a cruiser do you shut somebody up if you have nothing to hide?  If there's nothing you're going to say that's going to incriminate you, why – why do you shut somebody up?  I submit to you it's because you're trafficking in drugs and if you both keep quiet, you can do exactly what they're doing in here.  We don't know nothing.  We didn't see nothing.

Defense counsel objected, arguing that the prosecutor's statements essentially amounted to an improper comment upon appellant's failure to testify at trial. The trial court disagreed with the arguments of defense counsel, stating that it was a fair comment upon the evidence, based upon appellant's "nontypical" response in the back of the cruiser as well in response "to the Defenses [sic] arguments in this matter about knowledge."

{¶50} Arguments by counsel ensued with the prosecution arguing it was permitted to comment upon the failure of the defense to offer evidence in support of its case. The defense ultimately made a motion for a mistrial, which was denied by the trial court. The defense alternatively requested a curative instruction. The trial court agreed to instruct the jury that any reference in closing argument regarding the defendant's right not to testify should be disregarded. In the final instructions, the trial court instructed the jury as follows:

> It is not necessary that either Defendant take the witness stand in her own defense. Each has a constitutional right not to testify. The fact that either Defendant did not testify must not be considered for any purpose.

{¶51} The State argued below and now also argues on appeal that a comment by the prosecution regarding uncontroverted evidence does not equate to a comment upon the accused's failure to testify at trial. The State contends that the comment by the prosecutor was directed toward the strength of the State's evidence and not the accused's failure to testify and that the State is not prohibited

from commenting upon a defendant's failure to offer evidence in support of its case.

{¶52} The record reveals that the State's reference to appellant's co-defendant silencing her while in the back of the cruiser occurred pre-arrest. Appellant makes no arguments on appeal regarding references by the State to her pre-arrest silence. Rather, appellant seems to limit her argument to the State's reference to appellant's silence post-arrest. Despite appellant's argument to the contrary, this reference was not repeated but instead was an isolated reference that occurred during the rebuttal closing argument.

Legal Principles

{¶53} The Fifth Amendment to the United States Constitution, which is applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." *See also State v. Leach*, 2004-Ohio-2147, ¶ 11. The Fifth Amendment guarantees a criminal defendant's right against self-incrimination, which includes the right to silence during police interrogation. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). "Once a person invokes his or her Fifth Amendment right to remain silent, the State cannot use the person's silence [either in pre-arrest or post-arrest circumstances] as substantive evidence of guilt in its case-in-chief." *State v. Bennett*, 2014-Ohio-160, ¶ 63 (9th Dist.), citing *Wainwright v. Greenfield*, 474

U.S. 284, 298-299 (1986) (post-arrest silence) and *State v. Leach, supra,* at ¶ 30

(pre-arrest silence).  *See also Doyle v. Ohio*, 426 U.S. 610, 619 (1976) ("[T]he use

for impeachment purposes of [a defendant's] silence, at the time of arrest and after

receiving *Miranda* warnings, violated the Due Process Clause of the Fourteenth

Amendment.").

Legal Analysis

{¶54} There is no question that suggesting that appellant's post-arrest

silence constituted evidence of guilt was improper.  Importantly, we must note that

the comments at issue were not made during the State's case-in-chief, but rather

during the rebuttal portion of closing argument.  Nonetheless, we admit that we

find the State's comments to be a close call.

{¶55} However, even assuming arguendo that the comments were improper,

our analysis does not end here because "violations of a defendant's constitutional

right against self-incrimination are subject to a harmless error review."  *State v.

Castle*, 2017-Ohio-942, ¶ 22 (7th Dist.).  Error is harmless under Crim.R. 52(A) if

it does not affect substantial rights.  In most cases, in order to be viewed as

affecting substantial rights, the error must have been prejudicial.  *State v. Harris*,

2015-Ohio-166, ¶ 36.

{¶56} An error will be deemed prejudicial if there is a reasonable probability

that it affected the outcome of the judicial proceedings.  *State v. Taylor*, 2017-

Ohio-4395, ¶ 15 (4th Dist.). In determining whether prejudice has resulted from

the State's comment about a defendant's assertion of her right to silence, courts

consider factors such as "the extent of the comments, whether an inference of guilt

from silence was stressed to the jury, and the extent of other evidence suggesting

the defendant's guilt." *State v. Contreras*, 2008-Ohio-1413, ¶ 34 (8th Dist.).

{¶57} Here, the objection made by defense counsel during trial seemed to be

focused on an argument that the State's comment infringed upon appellant's right

not to testify at trial, rather than her right to remain silent post-arrest. The

arguments by counsel were primarily centered upon appellant's decision not to

testify at trial not being construed as evidence of guilt as a result of the comments

made by the State. In an attempt to address that concern, although the trial court

denied appellant's motion for a mistrial, it did agree to very clearly instruct the jury

on a defendant's right not to testify at trial and that the failure to testify cannot be

considered for any purpose. As soon as the trial resumed, the court instructed the

jury as follows:

> Before I read the final charge, I do want to address one issue with
> the jury. If during closing arguments there was any suggestion
> of inference that you should consider the Defendant's not
> testifying in this matter, you should disregard that. If – if – if
> that – if that inference or that thought entered your heads. The
> Defendants both have a constitutional right not to testify. You
> should not consider that for any purpose. And I'll instruct you
> on that again here in just a moment as I read the final charge.

The court also instructed the jury that opening statements and closing arguments of counsel are not evidence.

{¶58} Looking at the record as a whole in this case we cannot say that these comments prejudiced appellant, especially considering the trial court's curative instruction which was provided immediately after the comments were made. Again, these comments were made during the State's rebuttal, not its case-in-chief, and in fairness they appear to have been made in response to defense counsel's suggestion that because neither appellant nor her co-defendant made any admissions or confessions upon arrest, that they had no knowledge that cocaine was in the console.  Further, we agree with the State's argument that the comments lean more towards a comment upon appellant's lack of evidence to contradict the State's theory, as opposed to a comment equating appellant's silence with guilt.  Again, although these statements were arguably improper, in order to find prejudice, we must find that the evidence supporting appellant's convictions was lacking in some regard.  However, based upon our analysis below which concludes appellant's convictions were supported by sufficient evidence, this record does not support such a contention.  Accordingly, we find no merit to Issue 2 set forth under appellant's second assignment of error.

Issues 3 and 4:  Admission of Jail Calls and Limiting Instruction

{¶59} Appellant's third issue contends that the trial court's admission of jail calls made by herself and also her co-defendant violated her right to due process and denied her right to a fair trial, especially because neither of them testified at trial.  She further contends under her fourth issue presented for review that the trial court's provision of a limiting instruction related to the jail calls at the close of trial, rather than at the time the jail calls were admitted into evidence, also deprived her of a fair trial.  The State responds by arguing that the jail calls at issue were admissible under Evid.R. 801(D)(2)(a) as statements of a party opponent and did not constitute inadmissible hearsay.

Standard of Review

{¶60} " 'The admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Dean*, 2015-Ohio-4347, ¶ 91, quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.  The specific application of this standard of review is the same as set forth above under our analysis of appellant's first assignment of error.

Legal Analysis

{¶61} When faced with an argument that jailhouse phone calls were improperly admitted at trial, this Court has previously reasoned that Evid.R. 801(D)(2)(a) explicitly allows statements offered against a party provided that the

statement is " 'the party's own statement, in either an individual or a representative capacity." *State v. Smith*, 2022-Ohio-371, ¶ 42 (4th Dist.). Finding that Smith made the statements at issue, we found the jailhouse phone calls were properly admitted. *Id*.

{¶62} Likewise, in *State v. Tyler*, 2011-Ohio-3937 (4th Dist.), this Court stated as follows at ¶ 36 regarding an argument that jailhouse phone calls were improperly admitted as evidence:

> Under Evid.R. 801(D)(2)(a), statements of a party opponent are admissible as substantive evidence if offered against that party. Thus, Tyler's statements in the recording are admissions and are, by definition, not hearsay. Admissions by a party-opponent also include "the statements or questions to which [he] responds" if the failure to deny or correct the statement or question could be considered an adoption. *State v. Spires,* Noble App. No. 04 NO 317, 2005-Ohio-4471, 2005 WL 2065122, at ¶ 38, citing *State v. Twitty*, Montgomery App. No. 18749, 2002-Ohio-5595, 2002 WL 31341561. "A party may adopt the statement of a third person by failing to deny or correct under circumstances in which it would be natural to deny or correct the truth of the statement." Giannelli, Evidence (3d Ed.2010) 161, Section 801.24; *see also* Evid.R. 801(D)(2)(b).

{¶63} The jail calls at issue involving appellant were placed from appellant to her mother. During the calls, appellant and mother discuss trying to get the charges thrown out and trying to obtain joint counsel for both appellant and her co-defendant. At one point, appellant tells her mother that she is "kicking herself in the ass," in reference to the situation. The State essentially argued that the attempts to obtain joint counsel demonstrated complicity between the two defendants and that the statement about kicking herself in the ass was an acknowledgment of guilt, all admissible as statements of

a party opponent under Evid.R. 801(D)(2)(a). After reviewing Evid.R. 801(D)(2)(a) and applying the reasoning of both *Smith* and *Tyler, supra*, we find these statements were relevant and constituted statements of a party opponent being offered against appellant.

{¶64} However, we must separately consider the admission of the jail phone calls between appellant's co-defendant and her own mother. Here, the jail phone calls between appellant's co-defendant and her mother mostly consisted of the co-defendant providing her mother with various phone numbers in an effort to find a bondsperson to get her out of jail. The co-defendant's mother states at one point on one of the calls that she has been talking to "Yvette," which is the name of appellant's mother. The State argues the fact that appellant and her co-defendant continued to work together in securing bond demonstrated complicity as well as a conspiracy to work together even after their arrest. The State's theory at trial was one of complicity and the jury was instructed on both complicity and conspiracy.

{¶65} Additionally, those phone calls demonstrated the co-defendant attempting to direct her mother where to find cash to use for bond. After the co-defendant tells her mother to look in her top drawer under some shirts, her mother asks how much is in these "bands," to which appellant replies "thousand." Her mother then appears to start counting the bands, stating "one, two, three, four" before appellant can be heard shushing her and asking her why she had to say that on a jail call. The State argued having bands of $1000.00 ready to go to make bond was relevant in that it was indicative of involvement in drug activity. Importantly, however, both appellant and her co-defendant were acquitted on the drug trafficking charges.

{¶66} On appeal, the State contends that the statements made in these calls also constitute admissions by a party opponent. The trial court allowed the jail phone calls of the co-defendant to be admitted as admissions of a party opponent reasoning, in part, that "there might be other explanations that for the nature of these calls, one of which might be an ongoing conspiracy or relationship." Appellant contends the jail phone calls made by her co-defendant should not have been admitted at trial and that even if the statements can be characterized as statements by a co-conspirator, any alleged conspiracy ended when the crimes were completed "and attempts to obtain funds for release on bond are not in furtherance of any conspiracy." After reviewing Evid.R. 801(D)(2)(a) and applying the reasoning of both *Smith* and *Tyler, supra*, we also find these statements were relevant and constituted statements of a party opponent being offered against appellant's co-defendant, which were admissible directly against the co-defendant during the joint trial. Thus, we find no error or abuse of discretion in the trial court's admission of the jail phone calls between appellant's co-defendant and her mother.

{¶67} Importantly, it is crucial to consider that appellant and her co-defendant were jointly tried. Thus, the co-defendant's jail phone calls were admissible against the co-defendant under the same rationale that appellant's jail phone calls were admissible against her. There was no need to establish that the co-defendant's statements were admissible under the co-conspirator exception as to appellant when the statements were directly admissible as statements of a party opponent as against the co-defendant in the joint trial.

{¶68} It appears from a review of the record that not only did neither defendant file a motion to sever their trials below, they initially retained the same counsel and argued vigorously to be able to keep the same counsel, appealing the trial court's order that they were not permitted to have the same counsel to this Court and then the Supreme Court of Ohio. In arguing to have the same trial counsel, appellant and her co-defendant waived any and all conflicts of interests, represented that they had no desire to blame each other, and contended that they desired to present a unified defense to the charges. Although they ultimately proceeded to trial with different counsel, they failed to file a motion to sever the trials and their defense at all times remained unified. Thus, we find appellant's argument that her co-defendant's statements were inadmissible against her at trial to be disingenuous and without merit. Under these facts, we find no abuse of discretion in the trial court's decision to permit the jail phone calls to be admitted as evidence against appellant.

{¶69} Finally, we find no merit to appellant's argument that the limiting instruction as to the jail calls at the close of trial was insufficient to cure the improper admission of the jail calls during trial. First, we have found that the admission of the jail calls was not improper. Second, although defense counsel objected to the admission of the jail calls prior to their admission and again after their admission, he did not request that an immediate instruction be given. At the close of trial, the trial court instructed the jury, in pertinent part, as follows:

> During the trial you heard a recording of jail phone calls. During the playing of that recording, you heard statements from other individuals. The statements of other individuals was played only for

the limited purpose of providing context to the reactions and responses of Sashia Johnson, in her phone calls and to provide context to the reactions and responses of Adrienne Jordan in her phone calls. You may not consider the statements of other individuals on these phone calls for any other purpose.

{¶70} This jury instruction was a correct statement of the law and was provided along with all of the other jury instructions at the close of trial. Again, having found the jail phone calls were properly admitted, we find no error in the trial court's failure to provide some sort of immediate limiting instruction after the State played the calls for the jury. Accordingly, we find no merit to the arguments raised in the third and fourth issues presented under her first assignment of error.

Issue 5: Denial of Crim.R. 29(A) Motion for Acquittal

{¶71} In her fifth issue presented, appellant contends that the trial court's denial of her Crim.R. 29(A) motion at the close of the State's case deprived her of a fair trial based upon the properly admitted evidence at trial. The State responds by arguing that the trial court did not err in denying the motion for acquittal and that the convictions were supported by sufficient evidence.

Standard of Review

{¶72} A Crim.R. 29(A) motion may be sustained " 'if the evidence is insufficient to sustain a conviction of such offense[.]' " *State v. Johnson*, 2016-Ohio-867, ¶ 9 (4th Dist.), quoting Crim.R. 29(A). "By its terms, the rule employs the same standard of review as used in a sufficiency of the evidence argument." *Id.*, citing *State v. Miley*, 114 Ohio App.3d 738, 742 (4th Dist. 1996); *State v. Fox*,

2015-Ohio-3892, ¶ 29 (4th Dist.). "In reviewing the trial court's decision on a Crim.R. 29(A) motion, we conduct a de novo review and will not reverse unless clearly contrary to law." *Johnson* at ¶ 10, citing *State v. Umphries*, 2003-Ohio-599, ¶ 6 (4th Dist.) and *State v. Allen*, 2002-Ohio-2155 (4th Dist.). As explained below, when considering a sufficiency of the evidence argument, we afford no deference to the trial court under this standard and instead conduct our own independent review of the evidence.

{¶73} A claim of insufficient evidence invokes a due process concern and raises a question of whether the evidence is legally sufficient to support the verdict as a matter of law. *See State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Id.* Therefore, our review is de novo. *See State v. Groce*, 2020-Ohio-6671, ¶ 7, citing *In re J.V.*, 2012-Ohio-4961, ¶ 3.

{¶74} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. *Thompkins* at syllabus. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense proven beyond a reasonable doubt. *See Jackson*

*v. Virginia*, 443 U.S. 307, 319 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390 (Cook, J., concurring).

{¶75} Thus, when reviewing a sufficiency-of-the-evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. *See State v. Hill*, 75 Ohio St.3d 195, 205 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477 (1993). A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. *State v. Tibbetts*, 92 Ohio St.3d 146, 162 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

Legal Analysis

{¶76} R.C. 2925.11(A) sets forth the essential elements of the offense of possession of drugs. The statute provides: "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2901.22(B) defines when a person acts knowingly and states as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when a person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high

probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶77} Whether a defendant knowingly possessed a controlled substance "is to be determined from all the attendant facts and circumstances available." *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998); *accord State v. Corson*, 2015-Ohio-5332, ¶ 13 (4th Dist.). To establish knowing possession of a controlled substance under R.C. 2925.11(A), the State is not required to prove that "a defendant knew the specific characteristics of the item possessed that made it" a controlled substance. *State v. Jordan*, 89 Ohio St.3d 488, 494 (2000); *accord State v. Williams*, 2005-Ohio-1597, ¶ 34 (2d Dist.).

{¶78} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.), citing *State v. Cooper*, 2007-Ohio-4937, ¶ 25 (3d Dist.), in turn citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976). " 'Actual possession exists when the circumstances indicate that an individual has or had an item within his immediate physical possession.' " *State v. Kingsland*, 2008-Ohio-4148, ¶ 13 (4th Dist.), quoting *State v. Fry*, 2004-Ohio-5747, ¶ 39 (4th Dist.). "Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession." *State v. Hankerson*, 70 Ohio St.2d 87, (1982), syllabus; *State v. Brown*, 2009-Ohio-5390, ¶ 19 (4th Dist.). For constructive possession to exist, the State must show that the defendant was conscious of the

object's presence.  *Hankerson* at 91; *Kingsland* at ¶ 13; *accord State v. Huckleberry*, 2008-Ohio-1007, ¶ 34 (4th Dist.); *State v. Harrington*, 2006-Ohio-4388, ¶ 15 (4th Dist.); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) ("Ohio law is clear that a suspect can be in 'constructive possession' of * * * property without having actual physical possession of the property if it is located within premises under the suspect's control and he was conscious of its presence.").

{¶79} Both dominion and control, and whether a person was conscious of the object's presence, may be established through circumstantial evidence alone. See *State v. Brown*, 2009-Ohio-5390, ¶ 19; *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus ("[c]ircumstantial evidence and direct evidence inherently possess the same probative value"); *State v. Davis*, 2018-Ohio-4268, ¶ 50 (3d Dist.) (prosecution may establish constructive possession by circumstantial evidence alone).  "Circumstantial evidence is defined as '[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved ...' "  *State v. Nicely*, 39 Ohio St.3d 147, 150 (1988), quoting Black's Law Dictionary 221 (5th Ed.1979).

{¶80} Furthermore, to establish constructive possession, the State need not show that the defendant had "[e]xclusive control" over the contraband.  *State v. Tyler*, 2013-Ohio-5242, ¶ 24 (8th Dist.), citing *State v. Howard*, 2005-Ohio-4007,

¶ 15 (8th Dist.), in turn citing *In re Farr*, 10th Dist. Franklin No. 93AP-201, 1993 WL 464632, \*6 (10th Dist. Nov. 9, 1993) (nothing in R.C. 2925.11 or 2925.01 states that illegal drugs must be in sole or exclusive possession of accused at time of offense).  Instead, " '[a]ll that is required for constructive possession is some measure of dominion or control over the drugs in question, beyond mere access to them.' " *Howard* at ¶ 15, quoting *Farr* at \*6.  Two or more people can have constructive possession of the same object.  *State v. Reed*, 2018-Ohio-4451, ¶ 20 (6th Dist.).

{¶81} In other words, the fact that a fellow passenger might also have had something to do with the drugs does not preclude a finding that appellant constructively possessed them.  *See State v. Armstrong*, 2025-Ohio-771, ¶ 41 (6th Dist.).  Thus, simply because others may have access to the contraband, in addition to the defendant, does not mean that the defendant "could not exercise dominion or control over the drugs."  *Tyler* at ¶ 24; *accord State v. Walker*, 2016-Ohio-3185, ¶ 75 (10th Dist.); *State v. Philpott*, 2020-Ohio-5267, ¶ 67 (8th Dist.); *Wolery, supra*, at 329 ("[p]ossession \* \* \* may be individual or joint" and "control or dominion may be achieved through the instrumentality of another"); *State v. Russell*, 2022-Ohio-1746, ¶ 43 (4th Dist.).

> Although a defendant's mere proximity is in itself insufficient to establish constructive possession, proximity to the object may constitute some evidence of constructive possession. *Fry* at ¶ 40. Thus, presence in the vicinity of contraband, coupled with

another factor or factors probative of dominion or control over
the contraband, may establish constructive possession.

*Kingsland*, *supra*, at ¶ 13.

{¶82} Appellant argues under her fifth issue presented for review that the knowingly element of the offense of possession of cocaine was impermissibly based upon her post-arrest silence as well as the statements made by herself and her co-defendant when making jail calls. She argues that the jail calls should not have been admitted and any reliance upon their contents to establish the sufficiency of the evidence was improper. Appellant essentially argues that considering only the "properly admitted" evidence at trial, her Crim.R. 29(A) Motion for Acquittal should have been granted.

{¶83} The State argues that appellant's convictions were not improperly based upon her silence and that the jail calls were properly admitted as evidence that appellant and her co-defendant were involved in drug activity and further demonstrated complicity. The State additionally points to evidence in the record that although appellant was not the driver of the vehicle, the vehicle was registered in appellant's mother's name and appellant referred to the vehicle as being her vehicle more than once. Additionally, the State references the fact that the drugs were immediately accessible to appellant and appellant had a visible reaction to the discovery of the bag containing the cocaine.

{¶84} We have already determined that any reference by the State to appellant's silence, even if improper, was harmless beyond a reasonable doubt. Further, we have found no error with respect to the admission of the jail calls made by both appellant and her co-defendant. The evidence presented by the State included the fact that appellant and her co-defendant were traveling in a car owned by the appellant's mother. Appellant was sitting in the front passenger seat of the vehicle, and the bag of cocaine was located in the console between the driver and front passenger seats. A cell phone charging cord that was visible from outside the console was plugged into an outlet located inside the console where the cocaine was found.

{¶85} Further, although law enforcement officers pulled multiple grocery items out of the back of the vehicle while conducting their search, it was not until they pulled a grocery bag out of the front driver's side area that both appellant and her co-defendant had a visible reaction on the video while they were in the backseat of the cruiser. When the bag was located, both appellant and her co-defendant immediately looked stricken with worry, at times putting their heads down, covering their mouths with their hands, and exchanging glances with one another. At other times it looked like the women were wiping tears from their eyes.

{¶86} Additionally, when the bag was first pulled from the vehicle and held up for the women to see, appellant's co-defendant reached over and placed her hand upon her appellant's leg.  Moreover, when appellant's mother arrived to pick up her vehicle, appellant told her mother that she was sorry.  In addition to this evidence, as discussed above, jail calls played for the jury at trial revealed a discussion between appellant and her mother where appellant states that she is kicking herself "in the ass" for this situation.  "Numerous Ohio courts have determined that a defendant's demeanor, conduct, and statements that surround a criminal act are relevant to show a defendant's consciousness of guilt." *State v. Smith*, 2022-Ohio-371, ¶ 43 (4th Dist.), citing *State v. Johnson*, 2015-Ohio-4903, ¶ 72 (a defendant's statements, "like other conduct following the completion of a crime, may be relevant evidence of consciousness of guilt").

{¶87} We find, based upon these facts, that it was reasonable for the jury to conclude that appellant constructively possessed the cocaine at issue.  *See State v. Davis*, 2018-Ohio-4368 (3d Dist.) (constructive possession requires ability to exercise dominion and control over item, even without immediate physical possession; readily usable drugs in close proximity to accused can constitute sufficient circumstantial evidence to support constructive possession); *State v. Fulton*, 2024-Ohio-671 (7th Dist.) (readily usable drugs found in close proximity to defendant can be sufficient circumstantial evidence for constructive possession;

defendant did not own vehicle, but drugs where within reach). Aside from the fact that appellant's mother owned the vehicle and appellant referred to the vehicle as being her own vehicle, the drugs were within her reach, she had the ability to exercise dominion and control over them, and her facial expressions and body language while in the backseat of the cruiser spoke volumes with respect to appellant's knowledge of what was located in the bag.

{¶88} Thus, after viewing the evidence in a light most favorable to the State, we conclude this evidence, although circumstantial, sufficiently supported appellant's conviction for possession of cocaine. Accordingly, we find no merit to the arguments raised in the fifth issue presented under appellant's second assignment of error.

Issue 6: Cumulative Error

{¶89} In her sixth and final issue presented under her second assignment of error, appellant contends that she was denied a fair trial due to the cumulative effect of the errors below such that her convictions should be reversed. In response, the State points out that appellant's brief "interspliced" multiple issues presented for review that should have been argued under separate assignments of error. It contends, nevertheless, that there being no merit to any of the preceding arguments raised by appellant, her allegation of cumulative error fails.

## Standard of Review

{¶90} Under the cumulative error doctrine, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." *State v. Garner*, 74 Ohio St.3d 49, 64 (1995), citing *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus; *State v. Ruble*, 2017-Ohio-7259, ¶ 75 (4th Dist.). "Before we consider whether 'cumulative errors' are present, we must first find that the trial court committed multiple errors." *State v. Smith*, 2016-Ohio-5062, ¶ 106 (4th Dist.), citing *State v. Harrington*, 2006-Ohio-4388, ¶ 57 (4th Dist.). The cumulative error doctrine does not apply where the defendant "cannot point to 'multiple instances of harmless error.' " *State v. Mammone*, 2014-Ohio-1942, ¶ 148 ("And to the extent that Mammone more broadly invokes the doctrine of cumulative error, that doctrine does not apply because he cannot point to 'multiple instances of harmless error.' "), quoting *State v. Garner*, *supra*, at 64; *State v. Colonel*, 2023-Ohio-3945, ¶ 64-66 (4th Dist.); *State v. Fannon*, 2018-Ohio-5242, ¶ 124-125 (4th Dist.).

## Legal Analysis

{¶91} In addition to generally arguing cumulative error, appellant raises a new argument under her sixth issue presented for review. While this new

argument as well as the general cumulative error argument should have been separately assigned and argued as stand-alone assignments of error, we will address them in the interests of justice.  In addition to generally alleging cumulative error, appellant argues that the trial court erred in allowing the jury to utilize listening aids during its deliberations even though the aids had not been introduced as evidence.

{¶92} With respect to appellant's argument that the trial court erred in allowing the jury to utilize a listening aid during its deliberations, we note that the trial transcript indicates that all parties agreed that the jury be allowed to utilize a listening aid during the playing of the cruiser video in the State's case in chief.  In reaching this agreement, defense counsel agreed there were no material differences between the cruiser video and the listening aid.  When the jury posed a question during deliberations asking to view the video again, the court brought the jury back into the courtroom to view the video and, over the objection of the defense counsel, it once again permitted the jury to utilize the listening aid.

{¶93} Before doing so, the trial court inquired of defense counsel as to the basis for the objection and specifically whether or not there would be any prejudice to his client in allowing the jury to once again utilize the listening aid they had already used.  Counsel could point to no prejudice but maintained his objection. The trial court proceeded with allowing the jury to utilize the listening aid but

reminded the jury of its prior admonitions regarding the use of the aid. The court's

prior instruction regarding the listening aid was as follows:

> In this case, you will hear testimony concerning a recording. You will also hear the audio portion of that DVD and have a listening aid of that recording offered by the State. You're instructed that the listening aid in this case is merely an aid to facilitate listening. The evidence consists of the recording itself. The listening aid is provided to you only for the purpose of helping you understand the recording, if you find they do help you. If you find that there is a discrepancy between the listening aid and the recording, you are to rely only on the recording. Again, if you find any difference between the recording and the listening aid you should disregard the listening aid and use your own judgment as to what was said.

{¶94} In light of the foregoing, the record is clear that although the jury was

permitted to utilize the listening aid during its deliberations, it was only permitted

access to the aid for a short amount of time and only while it was brought back into

the courtroom to review the dashcam video. The jury was not permitted to take the

aid back into the jury room while it continued its deliberations. We find no error in

permitting the jury access to the aid in this controlled environment, especially

considering it had already viewed the aid previously and the trial court instructed

the jury at length regarding its use of the aid. Accordingly, we find no merit to

appellant's argument that this alleged error contributed to cumulative error below.

{¶95} Moreover, with the exception of one arguable error which we

determined to be harmless beyond a reasonable doubt, we have found no merit to

appellant's preceding assignments of error or the many other "Issues presented for

review" contained within each assignment of error. Thus, because appellant has not pointed to "multiple instances of harmless error," we cannot conclude that cumulative errors violated her constitutional right to a fair trial. Therefore, we find no merit to the arguments raised under appellant's sixth and final issue presented under her second assignment of error. Accordingly, appellant's second assignment of error is overruled.

{¶96} Furthermore, having found no merit to any of appellant's assignments of error, the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period set forth in the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J., concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 22, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**